# THE HUMP HAIRPIN COMPANY *v.* THE DE LONG HOOK & EYE COMPANY.

EXPERTS; TRADEMARKS; OPPOSITION TO REGISTRATION; PRIOR USE; DESCRIPTIVE PROPERTIES; TRADEMARK USE; APPEAL AND ERROR.

1. In a trademark opposition case involving the question whether the goods of the parties are of the same descriptive properties, while witnesses familiar with the articles of merchandise may give evidence of facts, within their knowledge, of the construction and uses of the articles, from which conclusions may be deduced, their opinions and conclusions are not entitled to any particular weight,—especially if there is direct conflict between them.

2. Registration of a trademark for hairpins containing the word "Hump" is improperly denied by the Commissioners of Patents, although it appears that the opposer in the opposition has adopted and made prior use of the same word as a trademark for hooks and eyes, since the goods of the applicant and the opposer are not of the same descriptive properties.

3. Articles of merchandise may be said to be of the same descriptive properties, within the meaning of the trademark act, when their general and essential characteristics are of such a sameness that the use of a similar trademark will be likely to mislead the general public. (Citing *American Stove Co.* v. *Detroit Stove Works*, 31 App. D. C. 304; *Walter Baker & Co.* v. *Harrison*, 32 App. D. C. 272; *Phœnix Paint & Varnish Co.* v. *John T. Lewis & Co.* 32 App. D. C. 285; *Muralo Co.* v. *National Lead Co.* 36 App. D. C. 541; and *Johnson Educator Food Co.* v. *Sylvanius Smith & Co.* 37 App. D. C. 1077.

4. Merely including an article of merchandise in a comprehensive class in the Patent Office does not of itself make it of the same descriptive properties of another included in the same class, within the meaning of the trademark act.

5. Property in a trademark—without which there can be no legal registration—is acquired not by the invention or discovery of a word or symbol, or by advertisement, but only by attaching or affixing it to the articles of merchandise for which it is intended to be used as a trademark. Nothing short of the latter constitutes a trademark use.

(Citing *Battle Creek Sanitarium Co.* v. *Fuller*, 30 App. D. C. 411; *Illinois Mach. Co.* v. *Broomall*, 34 App. D. C. 427.)

6. If the opponent in an opposition has not used the contested mark as a trademark upon goods of a like description, he has no foundation for the opposition to its registration by another, for he can sustain no legal injury or damage thereby. (Citing *McIlhenny* v. *New Iberia Extract of Tobasco Pepper Co.* 30 App. D. C. 337; *Battle Creek Sanitarium Co.* v. *Fuller*, 30 App. D. C. 415.)

7. If the opponent in an opposition to the registration of a trademark has not shown that he will be injured or damaged by the registration, he cannot question the sufficiency of the applicant's evidence to show his actual use of the mark in commerce as a trademark for the goods claimed. (Citing *Battle Creek Sanitarium Co.* v. *Fuller*, 30 App. D. C. 411.)

8. Whether there has been the actual trademark use by the applicant that is the condition of registration is a question solely for the consideration and determination of the Commissioner of Patents, and cannot be reviewed by this court.

No. 804. Patent Appeals. Submitted November 15, 1912. Decided January 6, 1913.

HEARING on an appeal by the applicant from a decision of the Commissioner of Patents sustaining an opposition to the registration of a trademark.                          *Reversed.*

The facts are stated in the opinion.

*Messrs. Offield, Towle, Graves, & Offield,* and *Mr. Frank L. Belknap, Mr. Albert H. Graves,* and *Mr. John M. Coit* for the appellant.

*Mr. Cyrus N. Anderson* and *Mr. Charles E. Rushmore* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Appeal from the decision of the Commissioner of Patents sustaining an opposition to the registration of a trademark.

The Hump Hairpin Company applied for the registration of

a trademark for hairpins, consisting of the words "The Hump" over the representation of a camel with a conspicuous hump showing between the prongs of a hairpin carried on the camel's back, as he traverses a desert, with the rays of a rising or setting sun in the back ground.

The application was allowed and ordered for publication; following which the De Long Hook & Eye Company filed an opposition. We adopt the statement of the grounds of opposition made by the Examiner of Interferences, as follows:

"The grounds are, in effect, that opposer and its predecessors in business have used the word 'Hump' as a trademark for hooks and eyes continuously since the year 1891; that since December, 1907, opposer has used the words 'De Long Co.' interchangeably with the word 'Hump' as a trademark for hooks and eyes; that opposer has manufactured and sold large quantities of hairpins of a form styled 'Cupid' since 1894; that by reason of the long-continued association of the trademark 'Hump' in the market with the products of opposer and its predecessors, and by reason of extensive advertisement, the same has become very widely known and valuable to the opposer, and the goods bearing this mark have become familiar to the purchasing public as the products of opposer; that hooks and eyes and hairpins belong to the same class of goods; and that opposer would be greatly damaged by the registration of the mark for hairpins for which application has been made."

De Long Hook & Eye Company and its predecessors, owned the patent—since expired—for the hook and eye with a spring bend resembling a hump, and used the word "Hump" as a trademark for said hooks and eyes long prior to any date claimed for said word, as a trademark by the Hump Hairpin Company, and its predecessors. The De Long Hook & Eye Company also began the manufacture of hairpins, calling the same "Cupid," and affixing that name to the packages. These pins did not have a hump in the same way as the hook and eye, but had a crump or twist in each prong. It is true also that the De Long Company widely advertised the hump hook and eye, and all of their productions, with such words as "see that Hump," and the like.

They also advertised their hairpins as made by the manufactur-ers of the hump hook and eye. It also manufactured and sold other forms of hooks and eyes under different names, "Atlas," "Columbia," etc., etc.

In the view that we have taken of the case it is not necessary to consider the effect of the expiration of the hook and eye patent upon the use of "Hump," or "See that Hump," as trademarks for hooks and eyes; which mark, it appears, had been registered for hooks and eyes by the De Long Company under former laws, and reregistered under the present law, in 1905 and 1906.

The question on which the case turns, in our opinion, is whether hooks and eyes and hairpins are of the "same descriptive properties." See sec. 7, trademark act.

Expert testimony, so-called, was taken by each party on this issue. From this it appears that hooks and eyes and hairpins are generally exposed for sale in notion departments, along with many other articles of notions unlike in material and uses. Stress is laid by the De Long Company's witnesses upon the fact that both articles are made of wire, are sold as notions, and are used as fastenings. Opposing witnesses note the many essentially different articles classed as notions,—some of which are made of wire, as are hairpins and hooks and eyes,—and say that hooks and eyes, as well as studs, buttons, buckles, etc., used for cloth fastenings, are dressmakers' findings; while hairpins, used for fastening the hair, are hairdressers' findings.

While witnesses familiar with the articles of merchandise may give evidence of facts, within their knowledge, of the construction and uses of said articles, from which conclusions may be deduced, it is not perceived that their opinions or conclusions are entitled to any particular weight. For this reason, as well as because of the direct conflict between them, we attach no weight to the evidence.

The question has been before this court in several cases. In *Phœnix Paint & Varnish Co.* v. *John T. Lewis & Bros. Co.* 32 App. D. C. 285–287 it was said that the goods need not be identical, but it is sufficient if there be a sameness in their general

and essential characteristics. That case involved the use of the same trademark upon packages of mixed paints by one party, and upon packages of paste paints by the other. These were held to be of the same descriptive properties. To the same effect: *Walter Baker & Co.* v. *Harrison*, 32 App. D. C. 272; *American Stove Co.* v. *Detroit Stove Works*, 31 App. D. C. 304–306. In a later case one party used the figure of a Dutchman as a trademark upon packages of calcimine; the other a figure of a Dutch boy upon packages of White lead. · Without deciding whether the marks so nearly resembled each other as to be likely to produce confusion in trade, if applied to the same articles, the court said: "The real question is whether the use of the figure of a Dutch boy on one package, and that of a Dutchman on the other, is calculated to mislead an ordinary person seeking to buy white lead, into buying a package of calcimine. Bearing in mind the essential differences between the two articles, we think it impossible that such should be the case. The purchaser has some definite use in view, and must know whether he wants white lead to compound into paint, or for other purposes, or whether he wants calcimine. He does not call for the Dutch boy, or the Dutchman package, but may probably call for the Dutch boy brand of white lead, or the Dutchman brand of calcimine. He may even call for the Dutch white lead, or Dutch calcimine, but he knows whether he wants white lead or calcimine, and, unless mentally defective, an unprincipled salesman could not induce him to take one for the other." *Muralo Co.* v. *National Lead Co.* 36 App. D. C. 541–543. See also *Johnson Educator Food Co.* v. *Sylvanus Smith & Co.* 37 App. D. C. 107.

The language quoted above is, if anything, more directly applicable to the conditions of the instant case. There could be no confusion in the minds of purchasers of hairpins and hooks and eyes, respectively, because one could not possibly be used for the purposes to which the other is applied. Tested by the rule enounced in the cases cited, the two articles have not the same descriptive properties, because their general and essential characteristics are not the same.

It is further contended that the articles must be taken to be of the same descriptive properties, because they are included in the same class in the Patent Office. By authority of the amendment to the trademark laws, approved May 4, 1906,—the Commissioner made certain classifications of merchandise for the purpose of registering trademarks. Hooks and eyes and hairpins were first included in Class 13,—"metal manufacturers, not otherwise classified." By amendment, in force at the time of the pending application, they are embraced in class '40,— "fancy goods, furnishings, and notions,"— of group . 6—"dry goods and clothing."

Including an article in a comprehensive class does not, of itself, make it of the same descriptive properties of another included in the same class. Sec. 2 of the act referred to does not contemplate any such minute classification. Contemplating that there would be some common ground suggesting the classification of articles under comprehensive heads, it permits the registration of a trademark for any and all goods within the class, upon which the trademark has actually been used, provided the particular descriptions of goods be stated. The De Long Hook & Eye Company had registered the mark originally for hooks and eyes, and in renewing the registration, under the existing law, it was still so limited. Moreover, it could not have extended its registration to hairpins, for it had not, in fact, used it as a trademark therefor. As we have seen, the actual mark affixed to its twisted or crimped pin was "Cupid." Property in a trademark—without which there can be no legal registration—is acquired, not by the invention or discovery of a word or symbol, or by advertisement, but only by attaching or affixing it to the articles of merchandise for which it is intended to be used as a trademark. Nothing short of the latter constitutes a trademark use. *Battle Creek Sanitarium Co.* v. *Fuller,* 30 App. D. C. 411–416; *Illinois Match Co.* v. *Broomall,* 34 App. D. C. 427–429. As the De Long Hook & Eye Company has shown no property right in the word "Hump" as a trademark for hairpins, either by actual use of the goods or by its use of the same on hooks and eyes only, it has no foundation for the

opposition to its registration by the Hump Hairpin Company, for it cannot sustain no legal injury or damage thereby. *McIlhenny* v. *New Iberia Extract of Tobasco Pepper Co.* 30 App. D. C. 337–339; *Battle Creek Sanitarium Co.* v. *Fuller,* 30 App. D. C. 411, 415. As said in the case last cited: "It is not sufficient for the opponent to say that he believes he would be damaged. He must allege some facts showing an interest in the subject-matter, from which damage might be inferred. If he has not used the mark as a trademark upon goods of a like description, he can suffer no damage from its registration by another."

The opponent also challenges the sufficiency of the evidence of the Hump Hairpin Company to show its actual use of the mark as a trademark for hairpins in commerce among the States, or with foreign nations. This is a question which the opponent cannot raise, having shown no interest that is not common to the general public. The Commissioner of Patents represents the public interest in trademark applications as he does in applications for patents. If satisfied with the showing made by an applicant, he passes it for publication, and no opposition can be entertained thereto save by one who can show an interest in the subject-matter entitling him to claim that he would be damaged by the registration of the trademark by another person. *Battle Creek Sanitarium Co.* v. *Fuller,* supra.

It may be remarked, however, that the testimony of the witness Coldberg—the representative of the Hump Hairpin Company—is subject to criticism; and that it is, to say the least, doubtful whether there had been the actual trademark use by the said company that is the condition of registration. But we refrain from expressing any opinion on that point, because, as pointed out above, it is not before us on this appeal. The question is one solely for the consideration and determination of the Commissioner.

For the reasons given the decision sustaining the opposition to registration will be reversed; and this decision ordered to be certified to the Commissioner of Patents. *Reversed.*